Kins, J.
This action was pending in this court by an appeal from-the judgment of th9 court of common pleas
July 21, 1886, the railroad company filed its petition in the oourt of common pleas against Franklin J. Tuttle, in-which they averred that they were the owners of a certain *631 ■described piece of land and entitled tc its possession, and that the defendant was keeping them out of possession of part of it, and that unless restrained, he would appropriate the premises in question to his own use.
There was an answer to that petition after a time in which the defendant denied that plaintiff was the owner of the premises in question; and he went forward in his answer to state the oircumstances under which the property had been divided into lots and conveyed to its different owners and proprietors, but elaimed that the plaintiff had never acquired any title to the premises which defendant was claiming, and also set up as defense that the rights, if any there were, were vested in another defendant, to-wit: The I., B. & W. Railway Company.
There was also an ameuded answer to that petition setting forth substantially the same facts as originally, which denied the title of the plaintiff,denied the defendant was keeping the plaintiff out of possession of his own property, and then going forward to set*up facts with relation to the platting of this land and its conveyance, and showing by the allegations of the anwer that according to‘the original plat there was a portion of the land in the tract platted, or which was claimed to be platted, that had not been actually platted and had not been conveyed, and he gives the dimensions substantially of this strip of land, and alleges the plaintiff has not any interest in it, and he prays that all the matters in difference between the parties concerning the said boundary may be adjusted and said plat may be reformed so as to represent the survey as made between the said Jots.
Sometime after that, January 10, 1890,the plaintiff filed another petition, oalled an amended petition, in which the plaintiff averred it was a corporation; that it was the owner of the lots, giving their numbers, and that the plaintiff was at ths time of the commencement of this action, in the actual possession of the said lots and had good title thereto in fee simple; that these lots had formerly borne a different numbering, and he gives it, and that defendant was giving out at the time of the commencement of this action, 1886,in public speeches and making claim to part of the lots, a strip off of the south part of said lots, and that defendant threatened to take possession of the same,and gave out that he had title thereto and that plaintiff had no title to any part of the premises in question, or to part of the pemises lying south of a certain line, and that soon after the commencement of this action the defendant had knooked down about two rods of the fence plaintiff 'had erected in the *632 north line of the premises, was still giving out and claiming that he was the owner of these premises, and that the defendant since the commencement of this action had built a shed on the west extremity of one of the lots, and said building or shed now stands on part of defendant’s premises, and prays that defendant’s title may be determined, plaintiff’s title may be quieted, and defendant enjoined from interfering with the plaintiff in any manner, and if he should be found in possession of any part of these premises,that he be ordered to surrender them.
In due time there was an answer filed to that petition. There was a denial that plaintiff was the owner, and also a denial that he was in the possession of any part of this strip,and then setting up substantially the facts as in previous answers, praying that the amended petition be dismissed and that to avoid further litigation the defendant prayed that the plat which he before described might be corrected in the manner he therein alleges.
Soon after this a supplemental answer was filed, setting up some additional facts, avérring that all the interest the plaintiff company has in the premises came to it .by virtue of a deed from a prior company, and that there never had been any conveyance of the premises in question by the prior company, the owner, who held the title originally, to the plaintiff company.
There was a reply filed to that, and another supplemental answer is filed, alleging that since the filing of the petition the plaintiff had conveyed its title to still another corporation. Then there is a third amended and supplemental answer filed, and it seems to cover substantially the same ground the original answer covered with many additional ■allegations, the length of which will preclude mefrcm reading. There was a reply denying the allegation that the land was oonveyed to another corporation, and there was a lease for a term of ninety-nine years, renewable forever.
Finally these parties came to trial in this court upon the evidence and issues joined by these pleadings, and I will 'briefly state the conclusion we have come to. From all these pleadings we can extract this fact, that this controversy is ¡a dispute over a boundary line and is fairly within the case •of Ellithorpe against Buck, 17th Ohio St., 72. It is urged that the plaintiff was not in possession,and could not maintain this suit until he was.
The property in controversy was unenclosed until shortly before the beginning of this action; it had never been enclosed; it was open for anybody to pass over it that saw fit, *633 and it is in evidence that people used it without regard to who owned it. Up tc within a short time before this suit was commenced there is evidence that the , plaintiff made some use of it, just how much is not very material. The second year before this action was commenced, the defendant, without making any other or additional boundaries to the laud, did enter upon it and cultivated a strip of potatoes a rod wide along one side of it,and the following year I think planted a second crop and cultivated it, and he testifies he gave permission to somebody else to come in there without renting it. There is evidence on the part of the railroad company that it also gave permission to somebody to plant potatoes. Beside that, the defendant, in the summer of the year when this action was commenced started the erection of a barn on the land and laid sills upon the foundation, erected posts and put on rafters, and had so far proceeded at least when this aotion was commenced. He went on after the commencement of the action and completed the shed, and has occupied it by himself or his tenants ever since. That is all there is of the possession of either of these parties that is worthy to be noticed in this case of this strip of land. That does not change it at all from a controversy as to where the Loundarv line is.
In 1852, somewhere about July, Lyman Miller, was the owner of a piece of land, about two acres or a little more, and he secured a surveyor by the name of T. W. Clapp to make a plat of it. Mr. Clapp or somebody seems tc have written he made it in July, 1852. On November 21, 1854, Mr. Lyman Miller acknowledged it, and it was left for record in this county on January 11, 1855. On January 4th, 1853, after the survey was made and plat was presumably in Mr. Miller’s possession, but before it had been acknowledged or recorded, he made conveyance to the S. C. & I. R. R. Co , of certain lots by the designation in the deed as shown upon his plat, lots numbered 9, 10, 11 and 12, and on September 14th, 1853, the sanse year, he made a conveyance tc the person from whom the defendant in this case claims, of lots 6, 7 and 8. Sometime after that, but the day is not before us, he also made a conveyance of another Jot on this plat, called lot 5. This plat contains 12 lots, and they are numbered from 1 to 12 inclusive. The lots conveyed to the railroad company 9, 10,11 and 12, lie substantially north of. and if this plat be correct, their south ends adjoin or abut against the property claimed by the defendants in this action, which are lots *634 6, 7 and 8, and also lot 5, a part of which is involved in this suit, so that by the plat the defendant’s property and plaintiff’s property are supposed to adjoin eaoh other. The plat shows upon it that lots 6 and 7 of the defendant’s property are bounded upon one end by Buckeye street, on Buckeye street it shows that they are eaeh four rods in width. The plat shows that they are each ten rods in length,extending bauk-at right angles with Buckeye street, and that each contains forty square rods. So far now these figures are definite and certain,and so far they declare two lots containing each forty rods, and so far as the evidence in this case will show the land is there to accommodate that description, and is owned by defendant. These are probably the only two lots on this plat where length and breadth and area are given and where there is land sufficient to accommodate these measurements, but these two lots comprise the south boundary line nearly the entire length of that which is now disputed. So far as this plat has been re-surveyed or recopied by surveyors, they have made the line bounding these lots eight rods in length, as being substantially the entire length of this disputed piece of land,and so far as any question is involved hetween plaintiff and defendant, that line adjoining these two lots is the only line that needs to be considered.
Now, as to the lots 9, 10, 11 and 12, plaintiff’s property, When the maker of this plat came to designate it. he designated it as I have said, by the number of lots,and he gave the area of each of the lots, and the length of certain of the lines. It is impossible to tell from the plat what lines are correct. There is m width given to these lets,except lot 12 is described as being two rods and fourteen one hundredths, and upon lot 9 appears the designation four rods. These lots, 9, 10, 11 and 12 abut upon what was then known, perhaps is still known as Maple street, and the L.S. & M.S.Ry. After Maple street was laid out, the railroad company, to whom this land w-as conveyed, came in possession of part or all of this street, all of it for some distance,and laid its railroad track upon it; so really these lots now and ever since these railroad tracks were built,have abutted on the railroad right of way. The property about which this dispute has arisen are the two lots shown as fronting on Maple street. Now it is said that the measurements of these lines are incorrect,and this raises our inquiry. Surveyors tell us,if they give to this Jot of land all there is described there as area, that there will be a shortage on the plaintiff’s land of a little *635 more than four rods; there will be a shortage of about the same, possibly a little more, probably six rods, of the lots which were originally conveyed to Mr. Tuttle. That shortage will appear, not in the two lots I have mentioned, but will appear in lot 8 which adjoins the two lots I have mentioned; and if the two lots I have mentioned are given forty square rods which the plat oalls for, then it is conceded, I think, that lot 8 will not have upon it the number of square reds given upon the plat, nor will it have the dimensions given on the plat. The plat as made by the surveyor of this county, Mr. Hughes, in which he gives to lots 6 and 7, the amount of land which they are said to contain in the original plat, gives to lot 8 a considerable less amount. That is about seven and three-fourths rods, or substantially the shortage which he'finds would exist in these lots by giving the areas described.
blow another plat is prepared by Mr. Hughes upon the theory of defendants here in which they undertake tc start upon the idea of bounding plaintiff’s lands by lines which shall be substantially like the length of these lines laid down in Miller’s plat without regard tc area, and it is said in argument that area should not govern length of lines. That is true if the lines are shown to be correct; but the diffi3ulty with Mr. Hughes’plat is he does not give the length to these lines as given in Miller’s plat, and he gives a good reason why he does not. He savs he cannot do it. That is evident; it is evident these lines cannot be laid at least so as to make a regular boundary and the lengths be taken as in Mr. Miller’s plat, tut why he changed them, no reason has yet been shown, nor do we understand why a surveyor can arbitrarily change figures or dimensions or lengths of lines that are laid down upon a plat to accommodate any given thecry. There is not certainly any legal reason for it; he does it arbitrarily, and if it conflicts with facts it must give way to them. The great fact in this case is the plat, which may have been made, and probably was, without any accurate survey, and assuming it was made by a surveyor in his office who had divided it and undertaken to give certain portions its dimensions and area, and to other portions area without dimensions, what are we to hold? At first it seems fundamental, and it appears here beyond any controversy that this paper shows that it was the intention of the maker of this plat to plat all the land between these streets which are mentioned which bound it, Buckeye street, State road, Lake Shore Railroad and Maple street. He in *636 tended to plat it into twelve lots, and when he conveyed by lot numbers, he intended to convey every foot of that property. To say that when thirty years thereafter, it is discovered by somebody’s theory that by rearranging these lines it can be found there is a surplus and that Mr. Miller said he was the owner of this surplus, would be an astonishing proposition. When he conveys all these lands by the lot numbers, it matters not whether these limes are correot or whether he gave entirely wrong lengths to all of them; still the intent is manifest to convey all this land,and that is the overwhelming fact in the case,and we cannot overcome that by any theory. The second fact pertinent here, is that the lots which abut this controverted property are laid out correctly on Mr. Miller’s plat, and the land is there, and the defendant is the owner of it. When he obtained a deed tc lots 6 and 7,he had a deed to forty square rods of land in each lot; his deed says so, says four rods wide and ten rods deep, and says so by making this plat part of the deed, and that would make a reasonably good description; a description in which we are not required to give greater foroe and effect to lines than area,for lines and area agree. Now abutting upon the north end of these two lots are the lots 9 and 10 on this plat. Mr. Hughes says that if 9 and 10 were correctly surveyed it would throw 11 over so that 9, 10 and 11, abut against these two lots Now it was the intention of Mr. Miller that they should so abut,and we cannot conceive any other way out of it. Taking these two points, the evident intention of the maker of this plat to plat the whole property and sell it, and the fact the two lots owned by defendant and abutting this line have all the land oalled for, and correspond with the deed in length,breadth and area,it fellows as an irresistible conclusion that, when Miller conveyed this land by lot numbers, he conveyed all the land he owned between 6 and 7, or if you please, 6, 7 and 8, and Maple street and Lake Shore road; he conveyed the land lying north of it. If there was a shortage on the plat,the rule is well settled in this state that it will be divided as near as possible pro rata between the parties, and authorities to that effect are in the 7th Ohio St., 264, and in 2d Ohio St., 258, cases in many respects like this. I refer to this particularly because the court in delivering opinions in both of these cases say that by plats or maps which were concededly incorrect both as to lines and area,that the intention of the maker of the plat was evident to divide the whole property by his plat. That intention is what we think is manifest *637 here. That being so, we think it olear he intended to convey all the property between the strip of land ten rods deep extending baok from Buckeye street and the street adjoining on the north when he made the deed to defendant. We think plaintiff has sufficient possession to quiet title to this disputed boundary,and is entitled to that relief in this case.